


IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| LANE McNAMARA, et al., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | No. 5-97CV-159 |
| | § | |
| BRE-X MINERALS LTD., et al., | § | |
| | § | |
| Defendants. | § | |

## ORDER

Several Defendants in this action have filed motions to dismiss for improper venue under Fed. R. Civ. P. 12(b)(3), or, in the alternative, to transfer this action to New York under 28 U.S.C. § 1404(a). The Court finds that these motions are not well taken.

## I.   BACKGROUND

This is a securities fraud case. Seeking class certification, the named Plaintiffs are persons who purchased common stock of Bre-X Minerals Ltd. ("Bre-X") and/or Bresea Resources Ltd. ("Bresea") between January 17, 1994 and May 2, 1997. The Plaintiffs essentially allege that the Defendants made misrepresentations that inflated the value of these stocks.

The Plaintiffs have brought four causes of action against the Defendants: (1) violations of Section 10(b) of the Securities Exchange Act of 1934 (the "Securities Act") (found at 15 U.S.C. § 78j(b)) and Rule 10(b)-5 promulgated thereunder (found at 17 C.F.R. § 240.10b-5); (2) violations of § 20(a) of the Securities Act (brought only against certain Defendants); (3) negligent misrepresentation; and (4) common law fraud.

342

## II. PROPRIETY OF VENUE IN THIS DISTRICT

Some of the Defendants in this action urge the Court to dismiss this case for improper venue under 28 U.S.C. § 1406(a). Because these Defendants have raised a venue challenge, the burden is now on the Plaintiffs to show that venue is proper in this district. *Youman v. Newfield Exploration Co.*, 977 F. Supp. 809, 810 (E.D. Tex. 1997); 15 Charles Alan Wright, Arthur R. Miller and Edward H. Cooper, FEDERAL PRACTICE AND PROCEDURE § 3826 (2d ed. 1987) (hereinafter "FEDERAL PRACTICE AND PROCEDURE"). The Plaintiffs assert that venue is proper under the special venue rules of the Exchange Act. The Court agrees.[1]

The Plaintiffs contend that venue is proper under Section 17 of the Securities Act. (*See* Second Amended Class Action Complaint, Dkt. #207, filed April 30, 1998 ("Complaint"), ¶ 16.) This provision governs venue of the federal securities claims brought by the Plaintiffs, and it provides:

> Any criminal proceeding may be brought in the district wherein any act or transaction constituting the violation occurred. Any suit or action to enforce any liability or duty created by this chapter or rules and regulation thereunder, . . . may be brought in any such district or in the district wherein the defendant is found or is an inhabitant or transacts business . . . .

15 U.S.C. § 78aa.

Relying on this provision, the Plaintiffs argue that venue is proper in this district because it is one in which an "act or transaction constituting the violation occurred." The Fifth Circuit has held

---

[1] The Plaintiffs also argue that venue is proper in this district under the general venue rules found at 28 U.S.C. § 1391. Some of the Defendants argue that the only venue rules applicable to a Securities Act claim are those special venue rules contained within the Act. The Court need not resolve this issue. Because venue is proper under the special rules, an examination of the propriety of venue under the general rules is unnecessary.

that "[t]he 'act' contemplated by the statute need not be crucial, nor must the fraudulent scheme be hatched in the forum district." *Hilgeman v. National Ins. Co. of America*, 547 F.2d 298, 301 (5th Cir. 1977) (internal quotations omitted). All that is required is "but one act within the forum district which represents more than an immaterial part of the allegedly illegal events." *Id.* at 301 n.9 (quoting *Bath Industries, Inc. v. Blot*, 427 F.2d 97, 114 (7th Cir. 1970)). "[T]he jurisdictional act cannot be trivial; it must be of material importance to the consummation of the scheme." *Id.* at 301 (internal quotations omitted).

As the Defendants correctly note, the Plaintiffs' Complaint does not explicitly allege that any of the Defendants engaged in a single act within the Eastern District of Texas. The Court, however, may look beyond the Complaint in resolving venue issues. In fact, "[s]ince improper venue is a matter of defense, it is not necessary for plaintiff to include [in the complaint] allegations showing the venue to be proper." FEDERAL PRACTICE AND PROCEDURE § 3826 (quoting the Advisory Committee's Note to Official Form 2); *see also Hilgeman*, 547 F.2d at 301 (considering affidavits submitted by plaintiff in determining the propriety of venue under 28 U.S.C. § 78aa).

In filings subsequent to the Complaint, the Plaintiffs have shown by affidavit that at least one act occurred in this district sufficient to support venue under § 78aa. The affidavit of Robert McBey contains the clearest example of such an act. (*See* McBey Aff., attached to Plaintiffs' Supplemental Brief on Personal Jurisdiction Motions, Dkt. #161, filed March 26, 1998.)

In his affidavit, McBey, a resident of this district, states that Bre-X representatives in Canada made misrepresentations to him regarding the amount of gold at the Busang site, thereby inducing him to purchase Bre-X and Bresea stock. According to the affidavit, these misrepresentations were transmitted from Canada to this district by Bre-X representatives via telephone and facsimile. The

transmission of this allegedly false information into this district via telephone was a sufficient act to support venue in this district. *See City of Harrisburg v. Bradford Trust Co.*, 621 F. Supp. 463, 468 (M.D. Penn. 1985) (venue proper in district into which defendants transmitted alleged misrepresentations via telephone, even though the defendants did not initiate the calls) (collecting cases); *see also Clement v. Pehar*, 575 F. Supp. 436, 442 (N.D. Ga. 1983).

The Plaintiffs also contend that Bre-X falsely described the amount of gold at Busang in statements issued to national publications which relayed the allegedly false information into this district. According to the Plaintiffs' Complaint, this activity is an example of how Bre-X distributed false information to investors, thereby causing them to purchase Bre-X and Bresea stock at artificially high prices. (*See* Complaint, ¶¶ 95, 96, 106, 108, 115, 122,, 125, 137, 139, 172, 204, 209, 210, 250(c), 258, 264.) For example, the Plaintiffs contend that the allegedly false statements were transmitted into this district via *The Wall Street Journal*. (*See* Miller Aff., attached to Plaintiffs' Opposition to Motion to Dismiss or Transfer, Dkt. #76, filed December 30, 1997.)

The false statements allegedly distributed by Bre-X to the press are a material part of the Plaintiff's securities fraud claims. The dissemination of these statements into this district through national publications is more than an immaterial part of the allegedly illegal activities. Therefore, this dissemination serves as an act sufficient to support venue in this district. *See Lemberger v. Westinghouse Elec. Corp.* [1976-77 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 95, 762 (E.D.N.Y. Nov. 1976) (citing *Texas Gulf Sulphur Co. v. Ritter*, 371 F.2d 145, 148-149 (10th Cir. 1967) ("[V]enue is proper in a district if a single press release is disseminated through a newspaper . . . ."); *S-G Securities, Inc. v. Fuqua Inv. Co.*, 466 F. Supp. 1114, 1121 (D. Mass. 1978) (finding venue in

district proper based in part on the fact that press releases were published in the district through *The Wall Street Journal*.)[2]

The Court is aware that in *S-G Securities* and in *Texas Gulf Sulfur*, the defendants apparently distributed press releases directly into the districts in question, in addition to merely causing the indirect dissemination of their contents through national publications. Additionally, the instant record does not clearly establish that any of the Defendants actually issued press releases to *The Wall Street Journal*. The articles provided by the Plaintiffs, however, indicate that at least some of the information reported therein came from interviews with Bre-X representatives. Nevertheless, these distinctions are irrelevant. The crucial consideration is that it was highly foreseeable that the statements of Bre-X representatives to national publications would make their way into this district and that potential investors would rely on such statements. *See Oxford First Corp. v. PNC-Liquidating Corp.*, 372 F. Supp. 191, 197-98 (E.D. Penn. 1974) (venue proper in district when defendants made statements to third party that defendants knew or should have known would be read and relied upon by plaintiffs in district).

Based upon the Plaintiffs' allegations that Bre-X, via telephone calls and statements to the press, disseminated false information in this district that was material to the alleged securities fraud

---

[2] The Defendants argue that *S-G Securities* is distinguishable because the court there found that the defendants' activities had a substantial impact on the operation of the plaintiff's headquarters in the district. The court discussed such an impact, but it did not rely solely upon it to support venue. In fact, the court made it clear that the dissemination of the press releases alone was sufficient to sustain venue. *S-G- Securities*, 466 F. Supp. at 1121-22. In particular, the court stated: "A material part of this claimed violation is the transmission of defendants' press releases into this district and the publication thereof within this district through *The Wall Street Journal* and the Dow Jones broad tape. The transmission and dissemination of these press releases are sufficient to sustain venue in this district." *Id.* at 1121.

violations, the Court finds that venue is proper in this district under § 78aa. Additionally, because venue is proper as to Bre-X, it is also proper as to all other Defendants in this action. *See Hilgeman*, 547 F.2d at 302 n.12 ("in a multi-defendant securities proceeding, where a common scheme of acts . . . is alleged, if venue is established for any of the defendants in the forum district there is sufficient justification to establish venue as to the other defendants").

### III. CONVENIENCE TRANSFER

As an alternative position the Defendants urge the Court to transfer this action to the Southern District of New York under 28 U.S.C. § 1404(a), which provides:

> For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

The purpose of § 1404 is to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense. *See State Street Capitol Corp. v. Dente*, 855 F.Supp. 192 (S.D. Tex. 1994). The Supreme Court has noted that § 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer of venue according to "individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988); *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964).

The party moving for a change of venue bears the burden of demonstrating why the forum should be changed. *Time, Inc. v. Manning*, 366 F.2d 690 (5th Cir. 1966). "[B]efore this Court can order a [convenience] transfer, the defendants must carry a strong burden to prove that [the convenience] factors clearly favor such a change." *TV-3, Inc. v. Royal Ins. Co. of America*, 38 F. Supp.2d 407, 411 (E.D. Tex. 1998). Defendants seeking a transfer cannot carry their burden by merely making unsupported assertions, but rather they must properly establish relevant venue facts

by affidavit, deposition or otherwise. *See Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 765-67 (3d Cir. 1973) (vacating district court's convenience transfer that was based not on supported evidence but only on "facts and conclusions asserted in defendants' motion"); *see also Job Haines Home for the Aged v. Young*, 936 F. Supp. 223, 228 (D.N.J. 1996) ("In reviewing the factors which weigh for or against [a convenience] transfer, this Court must look to facts which are a matter of record, not merely to assertions in the attorneys' briefs.").

The decision to transfer venue for the convenience of the parties and witnesses, in the interest of justice, is within the sound discretion of the district court. *Rich v. Southern Gulf Operators*, 879 F.Supp. 49 (E.D. Tex. 1995). In determining whether an action should be transferred under § 1404(a), the court examines factors which fall into two groups: (1) those relating to the convenience of the litigants, and (2) those relating to the public interest in the fair and efficient administration of justice. *Mortensen v. Maxwell House Coffee Co.*, 879 F.Supp. 54, 56 (E.D. Tex. 1995) (citing *Walter Fuller Aircraft Sales v. The Rep. of the Phillippines*, 965 F.2d 1375, 1389 (5th Cir. 1992)).

The convenience factors consist of (1) the plaintiff's choice of forum; (2) the relative ease of access to the sources of proof; (3) the cost of obtaining attendance of witnesses and other trial expenses; (4) the place of the alleged wrong; and, (5) the possibility of delay and prejudice if transfer is granted. *Id*. The public interest factors consist of (1) the relative backlog and other administrative difficulties in the two jurisdictions; (2) the fairness of placing the burdens of jury duty on the citizens of the state with the greater interest in the dispute; (3) the local interest in adjudicating local disputes; and, (4) the appropriateness of having the case in a jurisdiction whose law will govern the dispute in order to avoid difficult problems in conflicts of laws. *Id.*

The Defendants have failed to address most of the convenience transfer factors. They gave cursory treatment to only the following factors, none of which weigh in favor of transfer:

**A.     Plaintiff's Choice of Forum**

A plaintiff's right to choose a forum is well-established, and his choice is usually "highly esteemed." *Texas Instruments, Inc. v. Micron Semiconductor*, 815 F.Supp. 994, 996 (E.D. Tex. 1993). The plaintiff's choice of a forum is "a paramount consideration in any determination of transfer request, and that choice should not be lightly disturbed." *Young v. Armstrong World Indus.*, 601 F.Supp. 399, 401 (N.D. Tex. 1984) (citing *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970)). Further, the judicial system inherently provides a plaintiff with his choice of forum:

> The existence of [forum choices] not only permits but indeed invites counsel in an adversary system, seeking to serve in his client's interests, to select the forum that he considers most receptive to his cause. The motive of the suitor in making this choice is ordinarily of no moment; a court may be selected because its docket moves rapidly, its discovery procedures are liberal, its jurors are generous, the rules of law applied are more favorable, or the judge who presides in that forum is thought more likely to rule in the litigant's favor.

*McCuin v. Texas Power & Light Co.*, 714 F.2d 1255, 1261-62 (5th Cir. 1983).

The Defendants contend that in a nationwide class action, the plaintiffs' initial choice of forum gets lessened deference in a convenience transfer analysis. *See, e.g. Job Haines*, 936 F. Supp. at 228 ("the weight of authority holds that in class actions . . . the class representative's choice of forum is entitled to lessened deference"). However, even though the plaintiffs' choice of forum gets lessened deference, it is still at least a factor which should be considered in a convenience transfer analysis. *See, e.g. Georgouses v. Nate Resources, Inc.*, 963 F. Supp. 728, 730 (N.D. Ill. 1997) (plaintiff's choice of forum in class action is "simply one factor among many to be considered").

Another approach in a class action context is to give the plaintiffs' choice of forum lessened but still substantial deference in the transfer analysis. In fact, this was the approach recognized in *Job Haines*, one of the cases relied upon by the Defendants for the proposition that the plaintiffs' choice of forum in this situation is entitled to lessened deference. *Id.* at 228. The court, after stating the plaintiff's choice in the class action was entitled to lessened deference, went to recognize authority holding that "the 1404(a) factors are still balanced by the court in making a transfer determination, and the balance must tip strongly in favor of transfer before disturbing the plaintiff's choice." *Id.*

The named plaintiffs, some of which reside in this district, have obviously chosen the Eastern District of Texas as the forum in which they wish to pursue their claims. At a minimum, this choice is a factor which weighs against transfer. Additionally, the Court is inclined to at least give some deference to this choice, especially in light of the fact that the venue provisions of the securities laws are intended to give plaintiffs liberal choice in their selection of a forum. *See, Securities Investor Protection Corp. v. Vigman*, 764 F.2d 1309, 1317 (9th Cir. 1985) ("Without question, the intent of the venue and jurisdiction provisions of the securities laws is to grant potential plaintiffs liberal choice in their selection of a forum.").

**B.      Convenience and Associated Costs of Attendance of Witnesses**

The Defendants argue that any non-party witnesses in the United States are likely to be located in the Southern District of New York. This mere assertion is wholly insufficient to tip this factor in favor of the Defendants. As the party seeking transfer, Defendants must clearly specify the key witnesses to be called and make a general statement of what their testimony will cover. *Fletcher v. Southern Pacific Transp. Co.*, 648 F.Supp. 1400, 1402 (E.D. Tex. 1986) (citing *Young*, 601

F.Supp. at 401-402). Because they have failed to make such a showing, the Defendants have failed to carry their burden on this factor.

Additionally, Lehman argues that it would be more convenient for its employees to testify in New York. This is also an unpersuasive argument. "It is the convenience of non-party witnesses, rather than of employee witnesses . . . that is the more important factor and accorded greater weight." *Gundle Lining*, 844 F.Supp at 1166.

Witnesses in this case are likely to come from all over the world. Even if it would be slightly more convenient for them to travel to New York than Texarkana, this minimal difference falls far short of what is needed to tip this factor in favor of the Defendants. The Defendants have failed to carry their burden in showing that this prong of the analysis weighs in favor of transfer.

C.   **Relative Ease of Access to Proof**

The Defendants assert that to the extent any documents relevant to this case are in the United States, they will like be in New York. They have failed, however, to show that these documents are so voluminous that they would be difficult to transport. Therefore, the Court does not consider this as an important factor in the transfer analysis. *See Met-L-Wood Corp. v. SWS Indus., Inc.* 594 F. Supp. 706, 710 (N.D. Ill. 1984) (the location of documents is not an important factor "unless documents are so voluminous that their transport is a major undertaking"); *see also Arrow Elec., Inc. v. Ducommun, Inc.*, 724 F. Supp. 264, 266 (S.D.N.Y. 1989) (denying transfer into district where defendant's documents were located because doing so would merely shift the transportation burden from the defendant to the plaintiff). Additionally, the location of documents is entitled to little weight in this analysis, given the ease with which they can now be copied. *See* FEDERAL PRACTICE AND PROCEDURE § 3853. Finally, the Court notes that documents relevant to this case are likely to

be located in various places around the world, not just in New York. Accordingly, this factor does not weigh in favor of transfer.

### D.   Possibility of Delay and Backlog of Cases

The Defendants virtually ignored this factor, thereby failing to carry their burden in showing that it weighs in favor of transfer. The Court, however, notes this action is set for a trial in June 2000, only about six months later than the Plaintiffs requested during a management conference held on March 23, 1999. In light of an affidavit provided by the Plaintiffs showing that the docket in the Southern District of New York is more congested than this district's docket, the Court is concerned that there is a possibility of delay if this case is transferred to New York. Accordingly, this factor weighs against transfer.

Because the Defendants failed to address the remaining factors, they failed to carry their burden with regard to them. Of the factors addressed by the Defendants, none of them weigh in favor of transfer, and, therefore, the Plaintiffs' choice of forum should not be disturbed. For these reasons, the Defendants' motions to transfer are denied.

### IV.   CONCLUSION

Venue is proper in this district, and the Defendants' have failed to carry their burden in seeking a transfer to the Southern District of New York. Therefore, it is hereby

ORDERED that the following motions are DENIED: Kilborn Engineering's Motion to Dismiss (Docket #38) and SNC-Lavalin's Motion to Dismiss (Docket #59). It is further

ORDERED that the following motions are DENIED IN PART: J.P. Morgan's Motion to Dismiss (Docket #44); Lehman Brothers' Motion to Dismiss (Docket #48); P.T. Kilborn's Motion to Dismiss (Docket #232).

Signed this 31st day of March, 1999.

                                                DAVID FOLSOM
                                                UNITED STATES DISTRICT JUDGE